[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Duke Energy Ohio, Inc.,* Slip Opinion No. 2017-Ohio-5536.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-5536

IN RE APPLICATION OF DUKE ENERGY OHIO, INC., FOR AN INCREASE IN ITS NATURAL GAS DISTRIBUTION RATES;

OFFICE OF THE OHIO CONSUMERS' COUNSEL ET AL., APPELLANTS; DUKE ENERGY OHIO, INC., ET AL., INTERVENING APPELLEES; PUBLIC UTILITIES COMMISSION, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Duke Energy Ohio, Inc.,* Slip Opinion No. 2017-Ohio-5536.]

*Public utilities—Recovery of environmental-remediation costs—Appellants failed to show that Public Utilities Commission's order authorizing recovery of costs associated with public utility's environmental remediation of manufactured-gas-plant sites was unjust, unreasonable, or unlawful—Commission correctly refused to apply used-and-useful standard under R.C. 4909.15(A)(1)—Order affirmed.*

(No. 2014-0328—Submitted February 28, 2017—Decided June 29, 2017.)

APPEAL from the Public Utilities Commission, Nos. 12-1685-GA-AIR, 12-1686-GA-ATA, 12-1687-GA-ALT, and 12-1688-GA-AAM.

_____

**FRENCH, J.**

{¶ 1} Appellants, the Office of the Ohio Consumers' Counsel, the Ohio Manufacturers' Association, Ohio Partners for Affordable Energy, and the Kroger Company, appeal an order of the Public Utilities Commission that authorized intervening appellee Duke Energy Ohio, Inc., to recover costs associated with the environmental remediation of two manufactured-gas-plant ("MGP") sites near downtown Cincinnati.

{¶ 2} Appellants raise five propositions of law, but we have already resolved proposition Nos. 4 and 5. Of the three that remain, none warrants reversal. Therefore, we affirm the commission's order.

*Facts and procedural background*

{¶ 3} MGPs were common in the United States from the middle of the 19th century until the middle of the 20th century. By burning coal, oil, and other fossil fuels, MGPs produced gas that consumers used for lighting, heating, and cooking. The process of manufacturing gas created residual byproducts, including coal tar, sulfur, and ammonia. These residuals often became waste products that were buried at the plant sites, an accepted industry practice at the time. By 1970, nearly all MGPs had become obsolete for various reasons, including the prevalence of natural gas. But the disposal of waste products at the sites of former MGPs has caused a number of environmental problems, most notably soil and groundwater contamination.

{¶ 4} Duke's predecessor companies operated one or both of two MGPs near downtown Cincinnati for over a century. Manufactured-gas operations ceased at these plants in 1928 and 1963. The two sites—now known as the East End and West End sites—contain waste products and contaminants that federal

law defines as hazardous substances. As the current owner or operator of facilities from which there is a release or threatened release of hazardous material, Duke is liable for remediation of the MGP sites under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. 9601 et seq. Courts have interpreted liability under CERCLA as strict. *Westfarm Assocs. Ltd. Partnership v. Washington Suburban Sanitary Comm.*, 66 F.3d 669, 677 (4th Cir.1995).

{¶ 5} The East End and West End sites have undergone changes in operations and equipment since the two MGPs closed. They currently contain certain infrastructure and facilities that Duke uses to provide utility service to customers. Duke has been aware of its environmental obligations at the MGP sites since 1988, but the sites were considered low priorities because (1) public access to the properties was limited, (2) the groundwater is not used as a source of drinking water, and (3) the hazardous materials were capped with asphalt, concrete, and soil. The risk of exposure changed, however, in 2006 and again in 2009, when two new construction projects were planned on land adjacent to the MGP sites. In 2006, a real-estate developer purchased land adjacent to the East End site and announced plans to construct a residential development on the newly acquired property. And in 2009, Ohio and Kentucky finalized plans for a new bridge spanning the Ohio River that directly crosses the West End site.

{¶ 6} As a result, Duke initiated remediation of both MGP sites. Duke is remediating the sites through the Voluntary Action Program developed by the Ohio Environmental Protection Agency. *See generally* R.C. Chapter 3746.

{¶ 7} Once the environmental investigation began, Duke applied to the commission for authority to defer its future remediation costs. *See* R.C. 4905.13 (authorizing the commission to establish a system of accounts to be kept by public utilities and to prescribe the manner in which those accounts shall be kept). The commission granted the application but stated that it would not determine whether

Duke could recover its deferred costs until Duke filed an application for cost recovery. *In re Application of Duke Energy, Inc.*, Pub. Util. Comm. No. 09-712-GA-AAM, 2009 Ohio PUC LEXIS 969 (Nov. 12, 2009); *In re Application of Duke Energy, Inc.*, Pub. Util. Comm. No. 09-712-GA-AAM, 2010 Ohio PUC LEXIS 47 (Jan. 7, 2010).

{¶ 8} The case giving rise to this appeal began when Duke filed an application with the commission to increase its natural gas-distribution rates and to recover its deferred costs. Duke sought to recover environmental-remediation costs incurred through December 31, 2012. The parties entered into a comprehensive stipulation that resolved all issues except whether Duke could recover costs incurred to remediate the MGP sites.

{¶ 9} In November 2013, the commission issued an order adopting the stipulation and authorizing Duke to recover its remediation costs. The commission found that the costs of remediating the MGP sites were recoverable under R.C. 4909.15(A)(4), which allows utilities to recover "[t]he cost to the utility of rendering the public utility service for the test period."[1] According to the commission, Duke has shown on the record that the remediation expenses were a necessary and current cost of doing business as a public utility in response to CERCLA, the federal law that imposes strict liability on Duke for remediating the MGP sites. The commission rejected the argument that Duke could not recover remediation costs because the MGP sites were no longer "used and useful" in rendering utility service, as R.C. 4909.15(A)(1) requires.

{¶ 10} The commission set the amount of Duke's prudent costs at approximately $55.5 million, which Duke could recover from customers over a

---

[1] The test period is a 12-month period during which the commission monitors the utility's costs so that the commission can make an informed decision on the rate application. *See* R.C. 4909.15(C)(1); *Ohio Water Serv. Co. v. Pub. Util. Comm.*, 3 Ohio St.3d 1, 2-3, 444 N.E.2d 1025 (1983). In general, the intent of the test period is to set rates based on the costs expected to be incurred when rates come into effect so that revenues match costs and the utility does not over- or under-recover costs.

five-year period—approximately $925,000 a month. The parties had stipulated that if the commission allowed MGP costs, recovery would be through a rider and not base rates. The commission therefore ordered Duke to implement "Rider MGP" to recover costs from ratepayers on a per-bill basis. The commission required Duke to file annual updates of Rider MGP to reflect the costs Duke incurred for the preceding year.

{¶ 11} In addition, the commission found that Duke's shareholders should bear some responsibility for the environmental-remediation costs. To that end, the commission denied the company's request that ratepayers pay carrying costs on the deferred amounts. The commission also ordered Duke to continue efforts to recover costs from insurers and other third parties that may be liable for remediation costs and ordered that any proceeds recovered be returned to ratepayers, less the company's costs to achieve the recovery (e.g., litigation costs).

{¶ 12} Appellants filed a joint appeal to this court, challenging the commission's order. The commission and Duke have filed briefs in defense of the order.

*Standard of review*

{¶ 13} R.C. 4903.13 provides that this court may reverse, vacate or modify an order of the commission only when, upon considering the record, the court finds that the order is unlawful or unreasonable. *Constellation NewEnergy, Inc. v. Pub. Util. Comm.*, 104 Ohio St.3d 530, 2004-Ohio-6767, 820 N.E.2d 885, ¶ 50. We will not reverse or modify a commission decision as to questions of fact when the record contains sufficient probative evidence to show that the decision is not manifestly against the weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake or willful disregard of duty. *Monongahela Power Co. v. Pub. Util. Comm.*, 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29. The appellant bears the burden of

demonstrating that the commission's decision is against the manifest weight of the evidence or is clearly unsupported by the record. *Id*.

{¶ 14} Although this court has "complete and independent power of review as to all questions of law" in appeals from the commission, *Ohio Edison Co. v. Pub. Util. Comm.*, 78 Ohio St.3d 466, 469, 678 N.E.2d 922 (1997), we may rely on a state agency's expertise in interpreting a law when "highly specialized issues" are involved and when "agency expertise would, therefore, be of assistance in discerning the presumed intent of our General Assembly." *Office of Consumers' Counsel v. Pub. Util. Comm.*, 58 Ohio St.2d 108, 110, 388 N.E.2d 1370 (1979).

*Analysis*

{¶ 15} Appellants raise five propositions of law, but we settled the issues raised in the fourth and fifth propositions when we decided all matters concerning appellants' joint motion for a stay of the commission's order. The remaining propositions assert that the commission exceeded its authority when it allowed Duke to recover the costs incurred to remediate the MGP sites. Specifically, appellants maintain that the commission erred by authorizing Duke to charge customers for the remediation costs because the costs did not relate to property that was "used and useful," were not a normal recurring expense, and were not expenses for Duke's public-utility-distribution service. Appellants have not carried their burden of demonstrating reversible error. Therefore, we affirm the commission's decision.

{¶ 16} We begin with R.C. 4909.15(A), which charges the commission with setting "just and reasonable rates" and provides a mandatory ratemaking formula that requires the commission to make a series of determinations when fixing rates. R.C. 4909.15(A) states:

> The public utilities commission, when fixing and determining just and reasonable rates, fares, tolls, rentals, and charges, shall determine:
>
> (1) The valuation as of the date certain of the property of the public utility used and useful * * * in rendering the public utility service for which rates are to be fixed and determined. * * *
>
> * * *
>
> (2) A fair and reasonable rate of return to the utility on the valuation as determined in division (A)(1) of this section;
>
> * * *
>
> (4) The cost to the utility of rendering the public utility service for the test period * * *.

**Proposition of law No. 1: The commission erred when it refused to apply the "used and useful" standard in R.C. 4909.15(A)(1)**

{¶ 17} In their first proposition of law, appellants argue that expenses are not recoverable in rates under R.C. 4909.15(A) unless they relate to property that is "used and useful" in providing public utility service to customers. Appellants claim that because the MGPs have not operated at the East End and West End sites since 1928 and 1963, the properties could not be used and useful in rendering utility service. Thus, according to appellants, no statutory basis exists to allow Duke to recover remediation costs related to the two sites.

{¶ 18} We conclude that appellants have misread R.C. 4909.15(A). We find no error in the commission's refusal to apply the used-and-useful standard.

{¶ 19} As with any question involving statutory construction, we begin our analysis with the statutory language. *See In re Application of Ohio Power Co.*, 140 Ohio St.3d 509, 2014-Ohio-4271, 20 N.E.3d 699, ¶ 20. As we noted above, R.C. 4909.15(A) requires the commission to make a series of

determinations when fixing rates. First, R.C. 4909.15(A)(1) calls for the commission to determine "[t]he valuation as of the date certain of the property of the public utility used and useful * * * in rendering the public utility service for which rates are to be fixed and determined." That valuation is the rate base, and it represents the public utility's investment in real property, facilities (power plants, pipelines, poles, and wires), and other equipment (computers and software) it uses to serve customers. *See Babbit v. Pub. Util. Comm.*, 59 Ohio St.2d 81, 90, 391 N.E.2d 1376 (1979). Second, R.C. 4909.15(A)(2) requires the commission to determine a "fair and reasonable rate of return" on the utility's rate-base investment. And third, R.C. 4909.15(A)(4) requires the commission to determine the costs (expenses such as labor, fuel, and taxes) that a utility incurs in "rendering public utility service for the test period." Although appellants argue that costs must relate to property that is "used and useful" in order to be recovered in rates, the plain language of R.C. 4909.15(A) undermines that argument. Appellants' argument conflates the determination required under R.C. 4909.15(A)(1) and that required under R.C. 4909.15(A)(4). R.C. 4909.15(A)(1) speaks only to "valuation" of property for rate-base purposes. For its value to be included within the rate-base calculation, the public utility's property must be "used and useful" in rendering utility service. *Babbit* at 90. But that limitation does not appear in R.C. 4909.15(A)(4), which delineates what service-related costs the utility can recover from customers in rates. R.C. 4909.15(A)(4) contains neither the phrase "used and useful" nor any other language that ties recoverable costs to property that is used and useful. Rather, under Ohio's ratemaking statutes, operating expenses are recoverable if they were incurred in rendering service during the test period and are prudent. R.C. 4909.15(A)(4), 4909.151, and 4909.154. In short, because Duke is seeking to recover costs—and not its capital investment in the MGP property and facilities—the commission correctly refused to apply the used-and-useful standard under R.C. 4909.15(A)(1).

{¶ 20} Although appellants' interpretation of R.C. 4909.15(A) runs aground on the plain language of the statute, appellants offer three arguments to support their preferred reading of the statute. Those arguments, however, fail to demonstrate error on the part of the commission.[2] We address each argument in turn.

*The commission did not create an exception to the used-and-useful standard*

{¶ 21} Appellants first argue that the commission effectively created an unlawful "exception" to the used-and-useful standard in R.C. 4909.15(A)(1). But this argument misses a basic point. Because the used-and-useful standard applies only to the calculation of the rate base under R.C. 4909.15(A)(1) and not to cost recovery under R.C. 4909.15(A)(4), no exception was necessary. We reject appellants' argument.

*The commission explained why it did not follow its prior decisions in allowing*
*Duke to recover costs*

{¶ 22} Appellants' second argument made in their first proposition is that the commission departed from its own precedents without justification when it allowed Duke to recover environmental-remediation costs. Appellants cite two prior commission decisions in which, appellants contend, the commission disallowed cost recovery because the requested costs were tied to property that was not used and useful in rendering utility service. *See In re Application of Ohio Edison Co.*, Pub. Util. Comm. No. 89-1001-EL-AIR, 1990 Ohio PUC LEXIS 912 (Aug. 16, 1990); *In re Application of Ohio Edison Co.*, Pub. Util. Comm. Nos. 07-551-EL-AIR, 07-552-EL-ATA, 07-553-EL-AAM, and 07-554-EL-UNC, 2009 Ohio PUC LEXIS 58 (Jan. 21, 2009) (collectively, the "*Ohio Edison* cases"). Appellants maintain that this "matching principle"—linking expenses incurred in

---

[2] Under subheading B of proposition of law No. 1, appellants purport to raise the argument that the remediation expenses were not a cost of rendering public utility service as R.C. 4909.15(A)(4) requires. But appellants have merely repackaged their used-and-useful argument under subheading B, and there is no need to revisit that issue.

rendering service with property used and useful in rendering service—was an important factor in the *Ohio Edison* cases that likewise applies to this case.

{¶ 23} We have instructed the commission to "respect its own precedents in its decisions to assure the predictability which is essential in all areas of the law, including administrative law." *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.*, 42 Ohio St.2d 403, 431, 330 N.E.2d 1 (1975), *superseded on other grounds by statute as recognized in Babbit*, 59 Ohio St.2d at 431, 330 N.E.2d 1. If the commission departs from precedent, it must explain why. *See In re Application of Columbus S. Power Co.*, 128 Ohio St.3d 512, 2011-Ohio-1788, 947 N.E.2d 655, ¶ 52. But in this case, the commission did not depart from the *Ohio Edison* cases; it distinguished those cases on their facts.

{¶ 24} The commission explained that the facts of the *Ohio Edison* cases are distinguishable and that therefore, the orders in those cases are not dispositive of the cost-recovery issues raised in this case. Specifically, the commission stated that Duke, unlike the utility in the *Ohio Edison* cases that sought recovery of discretionary maintenance costs, is under a statutory mandate to remediate the contamination stemming from the production of manufactured gas on the MGP sites. The commission noted that the MGP sites required remediation because Duke still had ongoing utility operations on the sites and that a nearby planned residential development and bridge-relocation project required Duke to address potentially increased exposure. In contrast, the commission noted, the *Ohio Edison* cases involved maintenance costs for facilities that the utility no longer used to provide service to its customers. Pub. Util. Comm. Nos. 12-1685-GA-AIR, 12-1686-GA-ATA, 12-1687-GA-ALT, and 12-1688-GA-AAM, 2013 Ohio PUC LEXIS 259, *127-128 (Nov. 13, 2013).

{¶ 25} Appellants make a blanket assertion that the *Ohio Edison* cases "presented the same legal analysis based on the same determinative factual circumstances that the [commission] was presented with in the instant

10

proceeding." But this is not true; the commission cited specific facts that distinguish the cases. At no point do appellants even purport to challenge the commission's explanation why the *Ohio Edison* cases are factually distinguishable. Appellants cannot prevail when they fail to directly challenge the commission's decision as substantively unreasonable or unlawful.

*The in pari materia rule of construction is not applicable*

**{¶ 26}** Appellants' final argument made in their first proposition of law is that the commission erred when it failed to construe R.C. 4909.15(A)(1) and (A)(4) in pari materia. We disagree.

**{¶ 27}** Under the in pari materia rule of statutory construction, a court must read all statutes relating to the same general subject matter together to give proper force and effect to each one. *See United Tel. Co. of Ohio v. Limbach*, 71 Ohio St.3d 369, 372, 643 N.E.2d 1129 (1994). The in pari materia rule may be used to interpret a statute but only when some doubt or ambiguity exists. *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81, 676 N.E.2d 519 (1997); *Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 142 Ohio St.3d 236, 2014-Ohio-5511, 29 N.E.3d 903, ¶ 22. But we find no ambiguity in R.C. 4909.15(A) and therefore have no cause to resort to rules of statutory construction.

**Proposition of law No. 2: R.C. 4909.15(A)(4) requires that expenses be normal and recurring in order to be recovered in rates**

**{¶ 28}** In their second proposition of law, appellants argue that this court held in *Office of Consumers' Counsel v. Pub. Util. Comm.*, 67 Ohio St.2d 153, 164, 423 N.E.2d 820 (1981), that a public utility may recover only "normal, recurring expenses" under R.C. 4909.15(A)(4). Appellants maintain that because the costs of investigating and remediating the MGP sites are not normal or recurring expenses, the commission erred in allowing Duke to recover those costs from customers. We reject this argument.

{¶ 29} In *Consumers' Counsel*, the commission allowed the utility to recover as service-related costs under R.C. 4909.15(A)(4) its preconstruction investment in four nuclear power plants that were canceled during the planning stages. *Id*. at 153-154. Reversing the commission's order, we held that R.C. 4909.15(A)(4) did not allow the commission to transform an investment in capital assets into an ordinary operating expense. *Id.* at 164. The costs at issue represented a major capital investment that the utility would have recovered through the rate base under R.C. 4909.15(A)(1) had the nuclear plants not been canceled. *Id.* But we refused to allow the utility to recover its investment in these plants as service-related costs under R.C. 4909.15(A)(4) when the plants had never provided service to customers. *Id.* at 163-164.

{¶ 30} Our opinion did state that "R.C. 4909.15(A)(4) is designed to take into account the normal, recurring expenses incurred by utilities in the course of rendering service to the public." *Id*. But this statement is dictum and not part of the holding. We reject appellants' reliance on it here.

**Proposition of law No. 3: The commission failed to find that the investigation and remediation costs were related to Duke's provision of distribution service**

{¶ 31} Appellants argue in their third proposition of law that Duke failed to demonstrate a nexus between the MGP-remediation costs and the company's natural gas-distribution service. Appellants argue that the commission erred when it allowed Duke to recover the MGP-remediation costs from Duke's current distribution customers because, although those costs relate to facilities that were once used to produce gas, they have nothing to do with Duke's current distribution service. We disagree.

{¶ 32} So far as appellants are concerned, the commission would have fully satisfied Ohio's ratemaking laws if it had found a relationship between Duke's recovery of MGP-remediation costs and the company's current provision

of distribution service. But the commission did just that. It found that Duke was currently using the MGP sites for gas-distribution operations and that remediation was necessary for Duke to continue operations at the properties. *See* 2013 Ohio PUC LEXIS 259 at *141-142. Appellants point to no evidence that Duke was not using the MGP sites for current distribution operations or otherwise show that the commission erred in this determination. In short, the commission did exactly what appellants say that it failed to do. Therefore, this argument lacks merit.

**Proposition of law No. 4: The bond requirement set forth in R.C. 4903.16 is unconstitutional**

**Proposition of law No. 5: R.C. 2505.12 exempts the Consumers' Counsel from the bond requirement in R.C. 4903.16**

{¶ 33} In their fourth and fifth propositions of law, appellants challenge the bond requirement for obtaining a stay of a commission order. *See* R.C. 4903.16 (to stay execution of a commission order, "the appellant shall execute an undertaking"). Rider MGP went into effect on February 21, 2014. On May 14, 2014, we granted appellants' joint motion for a stay of the commission's order, preventing Duke from collecting Rider MGP from customers. 138 Ohio St.3d 1491, 2014-Ohio-2021, 8 N.E.3d 962. We initially granted the stay without requiring appellants to post a bond under R.C. 4903.16, but we later granted Duke's motion to require a bond. 139 Ohio St.3d 1490, 2014-Ohio-3298, 12 N.E.3d 1234. When appellants failed to post the required bond, the stay expired on its own, allowing Duke to resume collecting Rider MGP. *See* 140 Ohio St.3d 1495, 2014-Ohio-4845, 18 N.E.3d 1250.

{¶ 34} Appellants' arguments here are identical to the arguments they raised in their joint motion for a stay. We effectively rejected these arguments when we issued the entry requiring appellants to post a bond to stay the commission's order. Therefore, we dismiss proposition Nos. 4 and 5 as moot.

*See Verizon N., Inc. v. Pub. Util. Comm.*, 101 Ohio St.3d 91, 2004-Ohio-44, 801 N.E.2d 456.

*Conclusion*

**{¶ 35}** Appellants have the burden of demonstrating that the commission's order was unjust, unreasonable or unlawful. R.C. 4903.13; *AT&T Communications of Ohio, Inc. v. Pub. Util. Comm.*, 51 Ohio St.3d 150, 154, 555 N.E.2d 288 (1990). Appellants have not carried that burden in this appeal. Therefore, we affirm the commission's order.

Order affirmed.

O'CONNOR, C.J., and FISCHER and DEWINE, JJ., concur.

O'DONNELL, J., dissents, with an opinion joined by KENNEDY and O'NEILL, JJ.

_____

**O'DONNELL, J., dissenting.**

**{¶ 36}** Respectfully, I dissent.

**{¶ 37}** In my view, the order of the Public Utilities Commission that authorized Duke Energy Ohio, Inc., to recover costs associated with the environmental remediation of two former manufactured gas plant ("MGP") sites is unlawful because the commission failed to consider whether Duke incurred the costs to remediate property that was used and useful in rendering the public utility service for the test period.

**{¶ 38}** R.C. 4909.15(A) provides:

> The public utilities commission, when fixing and determining just and reasonable rates, * * * shall determine:
>
> (1) The valuation as of the date certain of the property of the public utility used and useful * * * in rendering the public utility service for which rates are to be fixed and determined. * * *

* * *

(2) A fair and reasonable rate of return to the utility on the valuation as determined in division (A)(1) of this section;

* * *

(4) The cost to the utility of rendering the public utility service for the test period * * *.

{¶ 39} After conducting an investigation, the commission's staff determined that most of the $62.8 million in environmental remediation costs Duke sought to recover "were incurred in areas of the former MGP sites that are not currently used and useful for natural gas distribution service and are thus not recoverable in natural gas rates" and recommended that Duke be permitted to recover only $6,367,724.

{¶ 40} The commission, however, rejected the recommendation and concluded "R.C. 4909.15(A)(1) and the used and useful standard" did not apply to the analysis of whether Duke could recover environmental remediation costs pursuant to R.C. 4909.15(A)(4). Pub. Util. Comm. Nos. 12-1685-GA-AIR, 12-1686-GA-ATA, 12-1687-GA-ALT, and 12-1688-GA-AAM, 2013 Ohio PUC LEXIS 259, *128-129 (Nov. 13, 2013). The commission determined Duke could recover approximately $55.5 million of the requested costs because Duke established that they "were a necessary cost of doing business as a public utility in response to a federal law, [the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. 9601 et seq.], that imposes liability on Duke and its predecessors for the remediation of the MGP sites" and that it had a "societal obligation to clean up these sites for the safety and prosperity of the communities in those areas and in order to maintain the usefulness of the properties." *Id.* at *141.

{¶ 41} The majority agrees with the position of the commission because R.C. 4909.15(A)(1), which contains the phrase "used and useful," pertains to the valuation of property for rate base purposes, whereas R.C. 4909.15(A)(4) pertains to service related costs and "contains neither the phrase 'used and useful' nor any other language that ties recoverable costs to property that is used and useful." Majority opinion at ¶ 19.

{¶ 42} But not all business costs are recoverable pursuant to R.C. 4909.15(A)(4); only costs incurred in "rendering the public utility service for the test period" are recoverable. *See Office of Consumers' Counsel v. Pub. Util. Comm.*, 67 Ohio St.2d 153, 164, 423 N.E.2d 820 (1981) (utility could not recover its investment in terminated nuclear power plants pursuant to R.C. 4909.15(A)(4) as service related costs because the plants never provided service to the utility's customers). If property of a public utility is not used and useful "in rendering the public utility service for which rates are to be fixed and determined" pursuant to R.C. 4909.15(A)(1) such that the utility may recover a fair and reasonable rate of return on its investment in the property from its customers in accordance with R.C. 4909.15(A)(2), the cost associated with the environmental remediation of the unused, useless property necessarily is not a cost incurred in "rendering the public utility service for the test period" such that the utility may recover the cost from its customers pursuant to R.C. 4909.15(A)(4).

{¶ 43} The principle that property related expenses must be associated with property that is used and useful is reflected in the commission's decisions in *In re Application of Ohio Edison Co.*, Pub. Util. Comm. No. 89-1001-EL-AIR, 1990 Ohio PUC LEXIS 912 (Aug. 16, 1990) ("*Ohio Edison I*"), and *In re Application of Ohio Edison Co.*, Pub. Util. Comm. Nos. 07-551-EL-AIR, 07-552-EL-ATA, 07-553-EL-AAM, and 07-554-EL-UNC, 2009 Ohio PUC LEXIS 58 (Jan. 21, 2009) ("*Ohio Edison II*") (collectively, the "*Ohio Edison* cases").

**{¶ 44}** In *Ohio Edison I*, Ohio Edison Company sought to increase its electric rate based on costs associated with maintaining a plant that had been removed from service in a cold standby status. Ohio Edison claimed its customers would benefit from the expenditures because it planned to return the plant to service in the near future and maintaining the plant would "reduce the costs of bringing the plant back on-line." *Ohio Edison I* at *143. In rejecting this argument, the commission stated:

> There is no dispute that the West Lorain plant was not in operation during the test year and the company has indicated that it will not be placed into service for at least two to three years * * * . * * * Given these facts, *we are not inclined to deviate from the concept of matching test-year expenses to used and useful plant and equipment*.

(Emphasis added.) *Id.* at *143-144.

**{¶ 45}** In *Ohio Edison II*, three electric companies sought recovery of expenses associated with securing and maintaining retired generation facilities that did not render any utility service during the test year. The commission found the expenses did "not reflect costs to the utility of rendering public utility service for the test period in accordance with Section 4909.15(A)(4), Revised Code, and the expenses related to the assets are not recoverable." *Ohio Edison II* at *31.

**{¶ 46}** As the majority acknowledges, this court has "instructed the commission to 'respect its own precedents in its decisions to assure the predictability which is essential in all areas of the law, including administrative law.'" Majority opinion at ¶ 23, quoting *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.*, 42 Ohio St.2d 403, 431, 330 N.E.2d 1 (1975), *superseded on other grounds by statute as recognized in Babbit v. Pub. Util. Comm.*, 59 Ohio St.2d 81,

89, 391 N.E.2d 1376 (1979). However, the majority concludes that "in this case, the commission did not depart from the *Ohio Edison* cases; it distinguished those cases on their facts." Majority opinion at ¶ 23. Specifically, according to the majority, the *Ohio Edison* cases involved "discretionary maintenance costs" for "facilities that the utility no longer used to provide service to its customers," whereas here, Duke is "under a statutory mandate to remediate the contamination" on the former MGP sites and those sites "required remediation because Duke still had ongoing utility operations on the sites and * * * a nearby planned residential development and bridge-relocation project required Duke to address potentially increased exposure." Majority opinion at ¶ 24.

{¶ 47} My view is that these are distinctions without a difference. A public utility's motivation for making an expenditure is not dispositive of the issue whether the cost incurred was in rendering the public utility service for the test period for purposes of R.C. 4909.15(A)(4). And the fact that Duke had ongoing operations on the former MGP sites during the test period is not a basis for rejecting the principle that property related expenses must be associated with property that is used and useful. Rather, that fact is relevant to the question whether the environmental remediation costs were incurred to remediate property that was used and useful in rendering the public utility service for the test period.

{¶ 48} For the foregoing reasons, I would reverse the order of the commission and remand this case to the commission to consider whether all, part, or none of the remediation costs were incurred to remediate property that was used and useful in rendering the public utility service for the test period.

KENNEDY and O'NEILL, JJ., concur in the foregoing opinion.

_____

Bruce J. Weston, Consumers' Counsel, and Larry S. Sauer and Joseph P. Serio, Assistant Consumers' Counsel; and Isaac, Wiles, Burkholder & Teetor and Mark R. Weaver, for appellant Office of the Ohio Consumers' Counsel.

Carpenter, Lipps & Leland, Kimberly W. Bojko, and Mallory M. Mohler, for appellant Kroger Company.

Robert A. Brundrett, for appellant Ohio Manufacturers' Association.

Colleen L. Mooney, for appellant Ohio Partners for Affordable Energy.

Michael DeWine, Attorney General, and William L. Wright, Thomas W. McNamee, Devin D. Parram, and Katie L. Johnson, Assistant Attorneys General, for appellee, Public Utilities Commission of Ohio.

Amy B. Spiller, Deputy General Counsel, and Elizabeth H. Watts, Associate General Counsel, for intervening appellee Duke Energy Ohio, Inc.

Whitt Sturtevant, L.L.P., Mark A. Whitt, Andrew J. Campbell, and Gregory L. Williams, for intervening appellees East Ohio Gas Company, d.b.a. Dominion East Ohio, and Vectren Energy Delivery of Ohio, Inc.

Stephen B. Seiple, for intervening appellee Columbia Gas of Ohio, Inc.

_____