O’Donnell, J.,
dissenting.
{¶ 36} Respectfully, I dissent.
{¶ 37} In my view, the order of the Public Utilities Commission that authorized Duke Energy Ohio, Inc., to recover costs associated with the environmental remediation of two former manufactured gas plant (“MGP”) sites is unlawful because the commission failed to consider whether Duke incurred the costs to remediate property that was used and useful in rendering the public utility service for the test period.
{¶ 38} R.C. 4909.15(A) provides:
The public utilities commission, when fixing and determining just and reasonable rates, * * * shall determine:
(1) The valuation as of the date certain of the property of the public utility used and useful * * * in rendering the public utility service for which rates are to be fixed and determined. * * *
* ⅜ ⅜
(2) A fair and reasonable rate of return to the utility on the valuation as determined in division (A)(1) of this section;
[[Image here]]
(4) The cost to the utility of rendering the public utility service for the test period * * *.
{¶ 39} After conducting an investigation, the commission’s staff determined that most of the $62.8 million in environmental remediation costs Duke sought to recover “were incurred in areas of the former MGP sites that are not currently used and useful for natural gas distribution service and are thus not recoverable *447 in natural gas rates” and recommended that Duke be permitted to recover only $6,367,724.
{¶ 40} The commission, however, rejected the recommendation and concluded “R.C. 4909.15(A)(1) and the used and useful standard” did not apply to the analysis of whether Duke could recover environmental remediation costs pursuant to R.C. 4909.15(A)(4). Pub. Util. Comm. Nos. 12-1685-GA-AIR, 12-1686-GA-ATA, 12-1687-GA-ALT, and 12-1688-GA-AAM, 2013 Ohio PUC LEXIS 259, * 128-129 (Nov. 13, 2013). The commission determined Duke could recover approximately $55.5 million of the requested costs because Duke established that they “were a necessary cost of doing business as a public utility in response to a federal law, [the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. 9601 et seq.], that imposes liability on Duke and its predecessors for the remediation of the MGP sites” and that it had a “societal obligation to clean up these sites for the safety and prosperity of the communities in those areas and in order to maintain the usefulness of the properties.” Id. at * 141.
{¶ 41} The majority agrees with the position of the commission because R.C. 4909.15(A)(1), which contains the phrase “used and useful,” pertains to the valuation of property for rate base purposes, whereas R.C. 4909.15(A)(4) pertains to service related costs and “contains neither the phrase ‘used and useful’ nor any other language that ties recoverable costs to property that is used and useful.” Majority opinion at ¶ 19.
{¶ 42} But not all business costs are recoverable pursuant to R.C. 4909.15(A)(4); only costs incurred in “rendering the public utility service for the test period” are recoverable. See Office of Consumers’ Counsel v. Pub. Util. Comm., 67 Ohio St.2d 153, 164, 423 N.E.2d 820 (1981) (utility could not recover its investment in terminated nuclear power plants pursuant to R.C. 4909.15(A)(4) as service related costs because the plants never provided service to the utility’s customers). If property of a public utility is not used and useful “in rendering the public utility service for which rates are to be fixed and determined” pursuant to R.C. 4909.15(A)(1) such that the utility may recover a fair and reasonable rate of return on its investment in the property from its customers in accordance with R.C. 4909.15(A)(2), the cost associated with the environmental remediation of the unused, useless property necessarily is not a cost incurred in “rendering the public utility service for the test period” such that the utility may recover the cost from its customers pursuant to R.C. 4909.15(A)(4).
{¶ 43} The principle that property related expenses must be associated with property that is used and useful is reflected in the commission’s decisions in In re Application of Ohio Edison Co., Pub. Util. Comm. No. 89-1001-EL-AIR, 1990 WL 10650394 (Aug. 16, 1990) (“Ohio Edison I ”), and In re Application of Ohio *448 Edison Co., Pub. Util. Comm. Nos. 07-551-EL-AIR, 07-552-EL-ATA, 07-553-EL-AAM, and 07-554-EL-UNC, 2009 WL 167364 (Jan. 21, 2009) (“Ohio Edison II ”) (collectively, the “Ohio Edison cases”).
{¶ 44} In Ohio Edison I, Ohio Edison Company sought to increase its electric rate based on costs associated with maintaining a plant that had been removed from service in a cold standby status. Ohio Edison claimed its customers would benefit from the expenditures because it planned to return the plant to service in the near future and maintaining the plant would “reduce the costs of bringing the plant back on-line.” Ohio Edison I at *143. In rejecting this argument, the commission stated:
There is no dispute that the West Lorain plant was not in operation during the test year and the company has indicated that it will not be placed into service for at least two to three years * * *. * * * Given these facts, we are not inclined to deviate from the concept of matching test-year expenses to used and useful plant and equipment.
(Emphasis added.) Id. at *143-144.
{¶ 45} In Ohio Edison II, three electric companies sought recovery of expenses associated with securing and maintaining retired generation facilities that did not render any utility service during the test year. The commission found the expenses did “not reflect costs to the utility of rendering public utility service for the test period in accordance with Section 4909.15(A)(4), Revised Code, and the expenses related to the assets are not recoverable.” Ohio Edison II at *31.
{¶ 46} As the majority acknowledges, this court has “instructed the commission to ‘respect its own precedents in its decisions to assure the predictability which is essential in all areas of the law, including administrative law.’ ” Majority opinion at ¶ 23, quoting Cleveland Elec. Illum. Co. v. Pub. Util. Comm., 42 Ohio St.2d 403, 431, 330 N.E.2d 1 (1975), superseded on other grounds by statute as recognized in Babbit v. Pub. Util. Comm., 59 Ohio St.2d 81, 89, 391 N.E.2d 1376 (1979). However, the majority concludes that “in this case, the commission did not depart from the Ohio Edison cases; it distinguished those cases on their facts.” Majority opinion at ¶ 23. Specifically, according to the majority, the Ohio Edison cases involved “discretionary maintenance costs” for “facilities that the utility no longer used to provide service to its customers,” whereas here, Duke is “under a statutory mandate to remediate the contamination” on the former MGP sites and those sites “required remediation because Duke still had ongoing utility operations on the sites and * * * a nearby planned residential development and bridge-relocation project required Duke to address potentially increased exposure.” Majority opinion at ¶ 24.
*449 Bruce J. Weston, Consumers’ Counsel, and Larry S. Sauer and Joseph P. Serio, Assistant Consumers’ Counsel; and Isaac, Wiles, Burkholder & Teetor and Mark R. Weaver, for appellant Office of the Ohio Consumers’ Counsel.
Carpenter, Lipps & Leland, Kimberly W. Bojko, and Mallory M. Mohler, for appellant Kroger Company.
Robert A. Brundrett, for appellant Ohio Manufacturers’ Association.
Colleen L. Mooney, for appellant Ohio Partners for Affordable Energy.
Michael DeWine, Attorney General, and William L. Wright, Thomas W. McNamee, Devin D. Parram, and Katie L. Johnson, Assistant Attorneys General, for appellee, Public Utilities Commission of Ohio.
Amy B. Spiller, Deputy General Counsel, and Elizabeth H. Watts, Associate General Counsel, for intervening appellee Duke Energy Ohio, Inc.
Whitt Sturtevant, L.L.P., Mark A. Whitt, Andrew J. Campbell, and Gregory L. Williams, for intervening appellees East Ohio Gas Company, d.b.a. Dominion East Ohio, and Vectren Energy Delivery of Ohio, Inc.
Stephen B. Seiple, for intervening appellee Columbia Gas of Ohio, Inc.
{¶ 47} My view is that these are distinctions without a difference. A public utility’s motivation for making an expenditure is not dispositive of the issue whether the cost incurred was in rendering the public utility service for the test period for purposes of R.C. 4909.15(A)(4). And the fact that Duke had ongoing operations on the former MGP sites during the test period is not a basis for rejecting the principle that property related expenses must be associated with property that is used and useful. Rather, that fact is relevant to the question whether the environmental remediation costs were incurred to remediate property that was used and useful in rendering the public utility service for the test period.
{If 48} For the foregoing reasons, I would reverse the order of the commission and remand this case to the commission to consider whether all, part, or none of the remediation costs were incurred to remediate property that was used and useful in rendering the public utility service for the test period.
Kennedy and O’Neill, JJ., concur in the foregoing opinion.