[Cite as *Clark v. State Teachers Retirement Sys.*, 2018-Ohio-4680.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Brian C. Clark et al., | : | |
| Plaintiffs-Appellants, | : | No. 18AP-105 |
| | | (C.P.C. No. 16CV-7360) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| State Teachers Retirement System, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on November 20, 2018

**On brief:** *Cohen Rosenthal & Kramer LLP, Joshua R. Cohen* and *James B. Rosenthal*; *J. Randall Nye*, for appellants. **Argued:** *Joshua R. Cohen.*

**On brief:** *Tucker Ellis LLP, Karl A. Bekeny, Benjamin C. Sasse, Michael J. Ruttinger* and *Christine M. Snyder*, for appellee. **Argued:** *Karl A. Bekeny.*

APPEAL from the Franklin County Court of Common Pleas

TYACK, J.

{¶ 1} Plaintiffs-appellants, Brian C. Clark, Steven Conn, B. David Ridpath, Zhaohui Xu, and John Zipp ("appellants"), appeal the February 2, 2018 judgment of the Franklin County Court of Common Pleas in favor of defendant-appellee, State Teachers Retirement System ("STRS"). For the reasons that follow, we reverse the judgment of the court of common pleas.

## I. Factual and Procedural History

{¶ 2} This appeal involves a challenge to the amount STRS collects as a "mitigating rate" from employers who have employees enrolled in alternative retirement plans ("ARPs") instead of the traditional defined benefit plan provided by STRS.

{¶ 3} Under Ohio law, full-time employees of public institutions of higher education who would otherwise be subject to STRS, may elect to participate in an ARP rather than the public retirement system that otherwise covers the employee. The ARP must be a defined contribution plan qualified under section 401(a) of the Internal Revenue Code that provides retirement and death benefits through a number of investment options. R.C. 3305.02. The ARP provides increased flexibility and portability in the participants' retirement investments. As with the traditional defined benefit plan, both the employer and employee contribute a percentage of the employee's compensation to the plan (currently 14 percent). But unlike the STRS defined benefit plan, ARP participants have individual accounts into which both employee and employer contributions are paid. Participants then choose how to invest the contributions from a set of investment options. What they receive in retirement is dependent on the returns generated by the contributions made to their ARPs.

{¶ 4} STRS members who are not employees of a public institution of higher education have the option of a defined contribution plan ("DC Plan"). Under this plan, which operates similarly to an ARP, teachers can choose investment options for the funds they and their employers contribute towards their retirement. The benefits they receive depend on the return generated by those investments.

{¶ 5} If an employee is enrolled in an ARP or the DC Plan, not all of the employer contribution goes to the employee's individual account. The employer must contribute a portion of its employer contribution to STRS to offset any negative financial impact of the ARP or DC Plan participation on the state retirement system. The contribution is known as the "mitigating rate." R.C. 3305.06(D); R.C. 3307.84. This appeal presents an issue of statutory construction related to the mitigating rate. Appellants' claim is premised on provisions of the Ohio Revised Code that were amended and subsequently repealed in 2017. The statutes relevant to this appeal are those that were in force in July 2013.

{¶ 6} R.C. 3305.06(D) originally set the mitigating rate for ARPs at 6 percent. The statute authorized the Ohio Retirement Study Council ("ORSC")[1] to automatically adjust this figure to reflect determinations made by triennial actuarial studies for purposes of

---

[1] The ORSC performs oversight functions for the various state retirement systems. R.C. 171.03.

assessing an appropriate mitigating rate. Only one such study was ever conducted resulting in a mitigating rate of 5.76 percent in 2000. In 2001, R.C. 3305.06 was amended to eliminate any automatic adjustment to the ARP mitigating rate, and gave ORSC the power to increase or decrease the rate based on actuarial studies. The amended statute provided that the percentage shall be 6 percent, except that the percentage may be adjusted by the ORSC to reflect determinations made by triennial actuarial studies conducted under R.C. 171.07.

{¶ 7} The mitigating rate for the DC Plan was controlled differently. The legislature gave STRS the authority to control the mitigating rate subject to actuarial studies. R.C. 3307.84. In 2000, upon the creation of the DC Plan, STRS commissioned an actuarial study which set the DC Plan mitigating rate at 3.5 percent. In addition, the General Assembly enacted R.C. 3305.061, which prohibited the ARP mitigating rate from exceeding STRS's mitigating rate for its DC Plan. This resulted in the ARP rate becoming 3.5 percent, notwithstanding the ARP rate set by ORSC was higher at 5.76 percent.

{¶ 8} The DC Plan rate and the ARP rate remained the same until July 2013, when STRS raised the mitigating rate for the DC Plan to 4.5 percent. STRS determined the ARP mitigating rate should also be raised to 4.5 percent to match the DC Plan based on its interpretation of R.C. 3305.061.

{¶ 9} In 2015, the General Assembly enacted R.C. 3305.062 which set the mitigating rate for ARPs at 4.5 percent. That statue was subsequently repealed and, in 2017, the system was changed to delegate the authority for calculating and setting the mitigating rates for ARPs and the DC Plan to STRS based on independent actuarial studies. R.C. 3305.061, the statute at issue in this appeal, was repealed by 2016 H.B. No. 520, Section 2, effective April 6, 2017.

{¶ 10} Appellants are a group of faculty members at Ohio's public colleges and universities who have opted for an ARP in lieu of participating in the traditional defined benefit plan provided by STRS. Appellants filed this action against STRS on August 8, 2016. Appellants sued for equitable restitution of the amounts collected by STRS when the mitigating rate was changed from 3.5 percent to 4.5 percent in July 2013 until the implementation of R.C. 3305.062 in September 2015. The appellants alleged that STRS unlawfully implemented this increase and unjustly enriched itself by doing so.

{¶ 11} The parties filed cross-motions for summary judgment. STRS took the position that the July 2013 ARP mitigating rate increase was required by operation of law under R.C. 3305.061. The appellants took the position that the rate increase was unlawful because only the ORSC had the authority to raise the mitigating rate for ARPs during this time. Furthermore, appellants argued that R.C. 3305.061 did not require parity between the DC Plan mitigating rate and the ARP mitigating rate, nor did it forbid the DC Plan rate from exceeding the ARP rate.

{¶ 12} The trial court granted STRS's motion for summary judgment on February 2, 2018. At the same time, it denied appellants' motion for summary judgment and dismissed as moot appellants' motion for class certification and appointment of class counsel.

{¶ 13} The trial court found that when ORSC failed to conduct the triennial actuarial studies required under R.C. 171.07, the actual ARP mitigating rate reverted to the original 6 percent rate designated under R.C. 3305.06. The court then reasoned that as long as the DC Plan mitigating rate was less than 6 percent, the "effective" ARP mitigating rate must be the same as the defined contribution plan mitigating rate pursuant to R.C. 3305.061. Thus, when STRS raised the defined contribution plan mitigating rate to 4.5 percent in July 2013, STRS could collect a 4.5 percent mitigating rate on ARPs, but no more, pursuant to R.C. 3305.061.

## II. Assignments of Error

{¶ 14} Appellants have assigned the following four errors for our review:

[I.] The trial court erroneously granted summary judgment to Defendant State Teachers Retirement System ("STRS") based on a misinterpretation of R.C. 3305.061 that permitted STRS to increase the so-called "mitigating rate" for its Alternative Retirement Plans to coincide with an increase in the "mitigating rate" for its Defined Contribution Plan.

[II.] In granting summary judgment to STRS, the trial court erroneously determined that decreases in the "mitigating rate" for Alternative Retirement Plans made pursuant to R.C. 3305.061 did not actually change the rate but only limited the amount STRS could collect.

[III.] In granting summary judgment to STRS, the trial court erroneously found that R.C. 3305.061 permitted increases to the "mitigating rate" for Alternative Retirement Plans to match

> increases in the "mitigating rate" for STRS's Defined Contribution Plan.
>
> [IV.] The trial court erred in denying summary judgment to the Appellants on their claim for equitable restitution of the one-percent increase in the "mitigating rate" for Alternative Retirement Plans that STRS unlawfully and unfairly collected and retained.

## III. Standard of Review

{¶ 15} This appeal was decided on cross-motions for summary judgment. When considering a motion for summary judgment, a court must determine if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Our review of summary judgment is de novo. *Tobin v. Steptoe & Johnson, PLLC*, 10th Dist. No. 17AP-821, 2018-Ohio-2957, ¶ 4.

{¶ 16} Here, the facts of the case are not in dispute, and the appeal presents a question of statutory construction in which the parties present differing interpretations of R.C. 3305.061. Interpretation of statutory language is a question of law that we review de novo. *MA Equip. Leasing I, LLC v. Tilton*, 10th Dist. No. 12AP-564, 2012-Ohio-4668, ¶ 18.

{¶ 17} Resolution of the dispute rests on a review of the plain language of R.C. 3305.061 in light of well-established principles of statutory construction. When the wording of a statute is clear and unambiguous, the only task is to give effect to the plain words used. *State v. Elam*, 68 Ohio St.3d 585, 587 (1994); *State ex rel. Carna v. Teays Valley Local Sch. Dist. Bd. of Edn.*, 131 Ohio St.3d 478, 2012-Ohio-1484, ¶ 20. It must be applied as written. *State ex rel. Pruce v. Ohio Pub. Emp. Retirement Sys. Bd.,* 10th Dist. No. 16AP-782, 2018-Ohio-713, ¶ 43.

{¶ 18} In enacting a statute, it is presumed that the entire statute is intended to be effective. R.C. 1.47(B). "The different sections and parts of sections of the same legislative enactment should if possible be so interpreted as to harmonize and give effect to each and all." *State ex rel. Myers v. Indus. Comm.*, 105 Ohio St. 103 (1922). Words and phrases in a statute are to be read in context with the whole statute. *Commerce & Indus. Ins. Co. v.*

*Toledo*, 45 Ohio St.3d 96, 102 (1989).  Words in statutes should not be construed to be redundant, nor should any words be ignored.  *East Ohio Gas Co. v. Pub Util. Comm.*, 39 Ohio St.3d 295, 299 (1988).

{¶ 19} Where, as here, a statute refers to other statutes that relate to the same subject matter, the in pari materia rule states that the court must read all statutes  relating to the same general subject matter together to give proper force and effect to each one.  *In re Duke Energy Ohio, Inc.*, 150 Ohio St.3d 437, 2017-Ohio-5536, ¶ 27.  The in pari materia rule may be used to interpret a statute, but only when some doubt or ambiguity exists.  *Id.* If there is no ambiguity, there is no cause to resort to rules of statutory construction.  *Id.*

## IV.  Analysis

### A. Assignments of Error One through Three

{¶ 20}  Assignments of error one through three are interrelated and will be addressed together.

{¶ 21}  Appellants contend that under R.C. 3305.061, STRS lacked the authority to increase the mitigating rate for ARPs when it increased the mitigating rate for the DC Plan.

{¶ 22}  STRS acknowledges that under R.C. 3305.061, a dip in the DC Plan rate limits the amount STRS can collect from ARP employers, and that at no time can STRS collect more from ARP employers than DC Plan employers.  However, STRS disagrees with appellants in that it claims the "actual" ARP mitigating rate remained at 5.76 percent for all relevant times at issue, but the "effective" ARP mitigating rate dropped to 3.5 percent when the DC Plan rate was changed to 3.5 percent.  During this time, ORSC never changed the ARP mitigating rate to 3.5 percent, so when STRS raised the DC Plan rate to 4.5 percent it was authorized to collect the same amount from ARP participants pursuant to R.C. 3305.061.  This interpretation ignores the statutory language that refers to "a change [in the mitigating rate] as required by this section."  R.C. 3305.061.

{¶ 23}  Under the statutory scheme in effect that is relevant to this lawsuit,  STRS did not have the statutory authority to set the ARP mitigating rate.  The ORSC had the authority to commission an actuarial study for purposes of setting the  mitigating rate for ARPs pursuant to R.C. 3305.06(D) and 171.07.

{¶ 24}  The statutorily required mitigating rate for ARPs is set by ORSC under R.C. 3305.06(D) and 171.07.  That rate was 5.76 percent based on the actuarial study in 2000

that lowered the rate from 6 percent to 5.76 percent. Although ORSC retained the power to change the mitigating rate based on further actuarial studies, it never did. ORSC's authority under R.C. 3305.06(D) and 171.07 is limited by R.C. 3305.061 which prohibits the ARP mitigating rate from exceeding the DC Plan mitigating rate.

{¶ 25} Instead, when STRS set the DC Plan mitigating rate at 3.5 percent, R.C. 3305.061 was triggered and operated as a ceiling or cap on the ARP mitigating rate. Under R.C. 3305.061, as a matter of law, the ARP mitigating rate could not exceed the DC Plan mitigating rate.

{¶ 26} R.C. 3305.061, as passed by the General Assembly in 2001, provided as follows:

> Notwithstanding section 171.07 [triennial actuarial study] and division (D) of section 3305.06 [mitigating rate of 6% subject to actuarial studies] of the Revised Code, the percentage of an electing employee's compensation contributed by a public institution of higher education under division (D) of section 3305.06 of the Revised Code shall not exceed the percentage of compensation transferred [mitigating rate] under section 145.87 [PERS DC Plan], 3307.84 STRS DC Plan], or 3309.88 [SERS DC Plan] of the Revised Code, as appropriate, by the state retirement system that otherwise applies to the electing employee's position. A change in the percentage of compensation contributed under division (D) of section 3305.06 of the Revised Code, as required by this section, shall take effect on the same day a change in the percentage of compensation takes effect under section 145.87, 3307.84, or 3309.88 of the Revised Code, as appropriate.

{¶ 27} The "notwithstanding" language requires an examination of the interplay between R.C. 3305.06(D) and 3305.061.

{¶ 28} R.C. 3305.06(D) provides as follows:

> Each public institution of higher education employing an electing employee shall contribute on behalf of that employee to the state retirement system that otherwise applied to the electing employee's position a percentage of the electing employee's compensation to mitigate any negative financial impact of the alternative retirement program on the state retirement system. The percentage shall be six per cent, except that the percentage may be adjusted by the [Ohio Retirement

Study Council] to reflect the determinations made by actuarial studies conducted under [R.C. 171.07].

{¶ 29} The six percent rate was adjusted by ORSC in 2000 to a rate of 5.76 percent based on an actuarial study.

{¶ 30} When R.C. 3305.061 became effective in 2001, the DC Plan mitigating rate had been set at 3.5 percent effective July 13, 2000. Therefore, R.C. 3305.061 came into play because the ARP rate was higher than the DC Plan rate.

{¶ 31} The "shall not exceed" language in R.C. 3305.061 indicates that the mitigating rate for ARPs cannot exceed the mitigating rate for DC Plans. If the ARP mitigating rate is higher than the DC Plan rate, the ARP mitigating rate must change to the same percentage as the DC Plan rate and take effect the same day as the DC Plan rate changes. Thus, for many years, the ARP rate remained at 3.5 percent because it could not, by law, exceed the DC Plan rate after the implementation of R.C. 3305.061.

{¶ 32} The question is what happens if the DC Plan rate is raised but is still less than the ARP mitigating rate set by ORSC? The statute appears to be silent on this issue.

{¶ 33} Appellants argue that, pursuant to former R.C. 3305.061, the ARP mitigating rate changed to 3.5 percent in 2001 when STRS set the mitigating rate for its DC Plan at that figure. Even though STRS subsequently raised the DC Plan rate to 4.5 percent in July 2013, appellants contend the ARP rate did not concomitantly increase, since (1) R.C. 3305.061 did not require the rates to remain in lockstep; (2) the statute did not countenance increases in the ARP rate; and (3) under R.C. 3305.06(D), ORSC had exclusive authority to change the ARP mitigating rate.

{¶ 34} STRS argues that as long as the DC Plan mitigating rate is less than the rate set pursuant to R.C. 171.07 or 3305.06(D), R.C. 3305.061 supersedes those statutes, and the ARP mitigating rate must change to be the same as the DC Plan mitigating rate.

{¶ 35} The plain language of R.C. 3305.06(D) provides that ORSC may adjust the mitigating rate for ARPs, but only to reflect the determination made by the actuarial studies commissioned under R.C. 171.07. But R.C. 3305.06(D) is limited by R.C. 3305.061 since changes under R.C. 3305.061 occur "notwithstanding" what is stated in R.C. 3305.06(D) and 171.07. Based on the plain language of R.C. 3305.061, the mitigating rate for ARPs "shall not exceed" the mitigating rate for the DC Plan. Thus, when the mitigating rate set

by STRS for the DC Plan drops below the mitigating rate for ARPs, the ARP rate must change as well since it is not permitted to exceed the mitigating rate for the DC Plan. The new mitigating rate for ARPs will be the same as the DC Plan mitigating rate so that the ARP mitigating rate does "not exceed" the DC Plan rate. This change occurs by operation of law since the remaining language in the statute indicates that such change "shall take effect on the same day a change in the percentage of compensation takes effect under [R.C. 3307.84]."

{¶ 36} In the present case, R.C. 3305.061 did not require that the ARP mitigating rate be the same as the DC Plan mitigating rate. The "shall not exceed" language of the statute only required a change to the ARP mitigating rate if the DC Plan mitigating rate is below the ARP mitigating rate. In such a situation, the ARP rate would decrease as a matter of law to satisfy the statutory requirement that the ARP rate not exceed the DC Plan rate.

{¶ 37} Again, under the plain language of the statute, an increase in the DC Plan rate would not trigger a required increase in the ARP rate since the ARP rate would not exceed the DC Plan rate under those circumstances. The only change that could occur by operation of law under the statute would be a decrease in the ARP rate to match a decrease in the DC Plan rate. R.C. 3305.061 does not require or authorize a change to increase the ARP rate to match an increase in the DC Plan rate. Instead, under the statutory scheme as it existed during the timeframe of this lawsuit, changes to the ARP rate were under the authority of ORSC unless a reduction in the DC Plan rate triggered the operation of R.C. 3305.061. ORSC was still authorized under R.C. 3305.06(D) and 171.07 to conduct actuarial studies and increase or decrease the ARP mitigating rate. But any new rate would be limited by the new ceiling set by the DC Plan mitigating rate pursuant to R.C. 3305.061.

{¶ 38} STRS urges this court to defer to its interpretation of the statute arguing that, if a statute is ambiguous, we should defer to the agency's interpretation. Doubts as to the interpretation of a statute should be resolved in favor of the agency if the interpretation is reasonable. *State ex rel. Gill v. School Emp. Retirement Sys. of Ohio*, 121 Ohio St.3d 567, 2009-Ohio-1358, ¶ 28. However, we find the statutes in question are clear and unambiguous. As such, our duty is to give effect to the plain words used in such a way as to give effect to each provision and giving force and effect to each statute. Accordingly, we sustain assignments of error one through three.

## B. Fourth Assignment of Error

{¶ 39} In their fourth assignment of error, appellants argue that the trial court should have granted their motion for partial summary judgment on their equitable restitution claim.  Unjust enrichment occurs when a person has and retains money or benefits which in justice and equity belong to another.  *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, ¶ 20.

{¶ 40} The trial court's denial of appellants' motion for summary judgment was based purely on the decision to grant summary judgment to STRS on a question of law regarding statutory interpretation.  Having determined that decision was in error, we sustain the assignment of error for the limited purpose of remanding the case to the trial court to consider the merits of appellants' motion for partial summary judgment on their unjust enrichment claim.

## V. Disposition

{¶ 41} Having sustained the four assignments of error, the judgment of Franklin County Court of Common Pleas is reversed and the case is remanded for further proceedings in accordance with this decision.

*Judgment reversed and remanded.*

KLATT and SADLER, JJ., concur.

————————————————