[Cite as *Madyda v. Ohio Dept. of Pub. Safety*, 2021-Ohio-956.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Kellie Madyda, et al., | : | |
| Plaintiffs-Appellees, | : | No. 20AP-217 |
| | | (Ct. of Cl. No. 2019-00426JD) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Department of Public Safety, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 25, 2021

**On brief:** *Dann Law*, and, *Marc E. Dann*; and *Zimmerman Law Offices, P.C.*, and *Thomas A. Zimmerman, Jr.*, for plaintiffs-appellees. **Argued:** *Marcel C. Duhamel*.

**On brief:** *Dave Yost*, Attorney General, *Susan M. Sullivan*, and *Peggy W. Corn*; *Vorys, Sater, Seymour and Pease LLP,* for appellant. **Argued:** *Marc E. Dann*.

APPEAL from the Ohio Court of Claims.

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Ohio Department of Public Safety ("ODPS"), appeals from a decision of the Ohio Court of Claims certifying the requested class of plaintiffs-appellees, Kellie Madyda, individually, and as legal representative for E.M. (a minor), David Cornelius, Aaron Hoyt, and Caitlin Rader ("appellees"). For the reasons that follow, we conclude that the Court of Claims did not abuse its discretion in granting class certification, and therefore affirm the Court of Claims judgment.

**I. Facts and Procedural History**

{¶ 2} This case arises from the procedures for administering driver's licenses and state identification ("ID") cards in the state of Ohio. Prior to July 2, 2018, individuals in

the state of Ohio could, upon meeting the necessary requirements, obtain a driver's license, temporary instruction permit or ID card (collectively "Ohio Credential") at an office of a Deputy Registrar,[1] which would create, print, and laminate the Ohio Credential on-site and provide it to the qualifying individual in person. (Mar. 28, 2019 Compl. at ¶ 11.) Pursuant to R.C. 4507.23 and 4507.50, Deputy Registrars were authorized to charge and collect a lamination fee in the amount of $1.50 ("Lamination Fee") to compensate them for the costs of creating, printing, and laminating each Ohio Credential so provided. *Id.* at ¶ 12.

{¶ 3} On July 2, 2018, the procedures for administering driver's licenses and ID cards changed, and Deputy Registrars ceased creating, printing, and laminating driver's licenses and ID cards on-site. *Id.* at ¶ 13. Instead, a third-party vendor was hired to create and laminate the driver's licenses and ID cards and mail them to the respective individuals within ten business days of purchase. *Id.* Despite the fact that the procedures changed as of July 2, 2018, the legislation authorizing the collection of the Lamination Fee did not change until July 3, 2019[2] and Deputy Registrars continued to collect the $1.50 Lamination Fee per Ohio Credential issued even though they were no longer performing the services for which the Lamination Fee was meant to compensate them.[3] *Id.* at ¶ 14. The record shows that between July 2, 2018 and July 2, 2019, Deputy Registrars issued 3,423,315 Ohio Credentials for which the Lamination Fee was charged. (Jan. 24, 2020 Tr. at 49; Def.'s Ex. A at ¶ 8.)

---

[1] Deputy Registrars are independent contractors of the Ohio Bureau of Motor Vehicles ("BMV") who act on behalf of the BMV in issuing driver's licenses and other types of licenses which permit the holder to operate a motor vehicle. *See* R.C. 4503.03(C)(1) and 4507, et seq.

[2] On July 3, 2019, the Ohio legislature modified the statutory language authorizing the Lamination Fee in R.C. 4507.23: "The 2019 amendment by HB 62, in (F), substituted "fifty cents for the authentication of the documents required for processing" for "fifty cents for laminating" in the first sentence, in the second sentence, substituted "A deputy registrar that authenticates the required documents for" for "A deputy registrar laminating" and deleted "charged for lamination, less the actual cost to the registrar of the laminating materials used for that lamination, as specified in the contract executed by the bureau for the laminating materials and laminating equipment" at the end and deleted the former last sentence; and substituted "A document authentication fee" for "Lamination of a driver's license, motorized bicycle license, or temporary instruction permit identification card" in (I)(5)." R.C. 4507.23, Page's Ohio Revised Code Annotated, Amendment Notes.

[3] Former R.C. 4507.23(F) and as amended by HB No. 62 (*see* footnote 2) provide that the Deputy Registrar performing the lamination (in the case of the former version) or authentication (in the case of the amended version) "shall retain the entire amount of the fee." Notwithstanding that it is the Deputy Registrars which retain the fee, there is no dispute that the ODPS is the proper defendant in this matter.

{¶ 4} On March 28, 2019, appellees filed a Class Action Complaint against ODPS asserting: (1) a claim for violation of Ohio Constitution, Article I, Section 16; and (2) a claim for Equitable Restitution/Unjust Enrichment, seeking damages both individually and on behalf of a putative class arising out of ODPS's alleged violations of R.C. 4507.23(F) and/or 4507.50(A) with respect to the Lamination Fee charged to appellees. On January 24, 2020, the trial court conducted an evidentiary hearing to determine whether class certification under Civ.R. 23 is appropriate.

{¶ 5} Subsequently, on March 20, 2020, the Court of Claims issued a decision and separate judgment entry finding that appellees satisfied the requirements of Civ.R. 23(A) and (B)(3), and that therefore class certification was appropriate. (Mar. 20, 2020 Decision at 10; Mar. 20, 2020 Judgment Entry.) The trial court defined the certified class as "[a]ll individuals who were issued an Ohio credential and were charged a lamination fee that was paid by the Ohio credential holder or paid on the Ohio credential holder's behalf to a Deputy Registrar for the State of Ohio on or after July 2, 2018 until July 2, 2019." *Id.* (Decision at 10.)

{¶ 6} This timely appeal followed.

## II. Assignment of Error

{¶ 7} ODPS assigns the following single assignment of error for our review:

The Court of Claims erred in certifying a class.

## III. Standard of Review

{¶ 8} A trial court has broad discretion in determining whether to certify a class action, and an appellate court should not disturb that determination absent an abuse of discretion. *Marks v. C.P. Chem. Co.*, 31 Ohio St.3d 200 (1987), syllabus. An abuse of discretion connotes more than an error of law or judgment; it implies an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. *Id.* at 201.

{¶ 9} The application of the abuse of discretion standard to a trial court's decision to certify a class "is grounded not in credibility assessment, but in the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket." *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 70 (1998). "[A]ny doubts about adequate representation, potential conflicts, or class affiliation should be

resolved in favor of upholding the class, subject to the trial court's authority to amend or adjust its certification order as developing circumstances demand, including the augmentation or substitution of representative parties." (Citations omitted.) *Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 487 (2000).

{¶ 10} Nevertheless, the trial court's discretion in deciding whether to certify a class action is not without limits and must be exercised within the framework of Civ.R. 23. *Hamilton* at 70. The trial court must carefully apply the requirements of Civ.R. 23 and conduct a rigorous analysis into whether those requirements have been satisfied. *Id.* A "rigorous analysis" often requires the trial court to "look * * * into the enmeshed legal and factual issues that are part of the merits of the plaintiff's underlying claims," *Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St.3d 329, 2015-Ohio-3430, ¶ 26, and "consider what will have to be proved at trial and whether those matters can be presented by common proof." *Cullen v. State Farm Mut. Auto. Ins. Co.,* 137 Ohio St.3d 373, 2013-Ohio-4733, ¶ 17, citing 7AA Wright, Miller & Kane, *Federal Practice and Procedure*, Section 1785 (3d Ed.2005). However, the trial court may consider the underlying merits of plaintiff's claims only to the extent necessary to determine whether the plaintiff has satisfied the requirements of Civ.R. 23. *Felix* at ¶ 26; *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St.3d 231, 2013-Ohio-3019, ¶ 44. Furthermore, although it is the preferred course, Civ.R. 23 does not mandate that the trial court make specific findings on each of the seven prerequisites for class certification, nor that it articulate its reasoning for such findings as part of its rigorous analysis. *Hamilton* at 70-71.

## IV. Law and Analysis

{¶ 11} Before a class may be properly certified as a class action pursuant to Civ.R. 23, seven prerequisites must be met: (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named plaintiff representatives must be members of the class; (3) the class must be so numerous that joinder of all the members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representatives must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three requirements for certification set forth in Civ.R. 23(B) must be met. *Hamilton* at 71, citing *Warner v. Waste Mgmt.,* 36 Ohio St.3d 91, 96 (1988); Civ.R. 23.

The first two of the foregoing prerequisites "are implicitly required by Civ.R. 23, while [the] five others are specifically set forth therein." *Warner* at 94.

{¶ 12} The party seeking to maintain a class action pursuant to Civ.R. 23 "bears the burden of demonstrating by a preponderance of the evidence that the proposed class meets each of the requirements set forth in the rule." *Cullen* at ¶ 15, citing *Warner* at 94. A party seeking to maintain a class action satisfies its burden when it establishes that all the prerequisites of Civ.R. 23(A) are met and that at least one of the conditions of Civ.R. 23(B) exists. *Hamilton* at 71.

{¶ 13} As set forth previously, in this case the trial court granted certification of the requested class after finding that all of the prerequisites of Civ.R. 23(A) had been met, i.e., identifiable class, class membership, numerosity, commonality, typicality, and adequacy of representation, and that appellees had satisfied Civ.R. 23(B)(3)'s predominance and superiority requirements. ODPS does not contend that the trial court erred in determining all of the prerequisites of Civ.R. 23(A) were satisfied; rather, ODPS asserts that the trial court improperly found that the requirements of Civ.R. 23(B)(3) had been met.

{¶ 14} For a class action to be certified under Civ.R. 23(B)(3), the trial court must affirmatively find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Civ.R. 23(B)(3). A "key purpose" of the predominance requirement "is to test whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Felix*, at ¶ 35, citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). " 'For common questions of law or fact to predominate it is not sufficient that such questions merely exist; rather, they must represent a significant aspect of the case.' " *Cullen*, at ¶ 30, quoting *Marks* at 204. Additionally, they must be " 'capable of resolution for all members in a single adjudication.' " *Cullen* at ¶ 30, quoting *Marks* at 204.

{¶ 15} Furthermore, it is not sufficient for class certification under Civ.R. 23(B)(3) that the allegations of the complaint merely raise "a colorable claim." *Cullen* at ¶ 34. Rather, the plaintiff must demonstrate that "questions common to the class *in fact* predominate over individual ones." (Emphasis sic.) *Id.* " 'To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and

applicable to the class as a whole predominate over those issues that are subject to only individualized proof.' " *Id.* at ¶ 30, quoting *Randleman v. Fidelity Natl. Title Ins. Co.*, 646 F.3d 347, 352-53 (6th Cir.2011).

{¶ 16} As for the superiority requirement, the determination of whether a class action is the superior method of adjudication requires that the trial court " 'make a comparative evaluation of the other procedures available to determine whether a class action is sufficiently effective to justify the expenditure of judicial time and energy involved therein.' " *State ex rel. Davis v. Pub. Emps. Retirement. Bd.*, 111 Ohio St.3d 118, 2006-Ohio-5339, ¶ 28, quoting *Schmidt v. Avco Corp.*, 15 Ohio St.3d 310, 313 (1984).

{¶ 17} Civ.R. 23(B)(3) sets forth a list of factors "pertinent" to both the predominance and superiority findings required under Civ.R. 23(B)(3): (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." This list, however, is not exhaustive, and other relevant factors may also be considered. Civ.R. 23(B)(3)(a) through (d); *State ex rel. Davis*, 111 Ohio St.3d 118, 2006-Ohio-5339, at ¶ 28, citing 7AA Wright, Miller & Kane, *Federal Practice and Procedure*, Section 1777, (3d Ed.2005) at 118.

{¶ 18} In considering the factors relevant to the court's inquiry on both the predominance and superiority requirements, it is important that the trial court keep in mind the essential purpose of class certification under Civ.R. 23(B)(3), which is to enable " 'numerous persons who have small claims that might not be worth litigating in individual actions to combine their resources and bring an action to vindicate their collective rights.' " *Hamilton*, 82 Ohio St.3d at 80, quoting Wright et al., *Federal Practice and Procedure*, Section 1777, at 518. Furthermore, a trial court must be mindful that " '[q]uestions going to the merits of the action are not determined at the class certification stage.' " *Assn. for Hosps. & Health Sys. v. Dept. of Human Servs.*, 10th Dist. No. 04AP-762, 2006-Ohio-67, ¶ 26, quoting *George v. Ohio Dept. of Human Serv.*, 145 Ohio App.3d 681, 687 (10th Dist. (2001). Indeed, a court abuses its discretion if it determines the merits of an action at the class certification stage. *Id.* "A court may examine the underlying claims only for the

purpose of determining whether common questions exist and predominate and not for the purpose of determining the validity of such claims." *Id.*

{¶ 19} In the instant matter, in finding that the predominance requirement of Civ.R.23(B)(3) was met, the trial court stated:

> [t]he common question of law affecting every class member is whether [ODPS] was authorized to collect the $1.50 lamination fee. The validity of the $1.50 lamination fee is the common legal question to each class member. Thus, the Court finds that this common question of law predominates over any questions affecting only individual members.

(Decision at 8.)

{¶ 20} ODPS contends that the trial court's findings with regard to predominance under Civ.R. 23(B)(3) constituted an abuse of discretion. Specifically, ODPS submits that contrary to the requirement of Civ.23(B)(3) that "questions of law or fact common to class members predominate over any questions affecting only individual members," the question that will predominate in this case is "did each individual class member pay the Lamination Fee?" (Appellant's Reply Brief at 6; *see also* Appellant's Brief at 35.) ODPS arrives at this conclusion following a chain of reasoning which, in essence, may be summed up as follows: because the class as certified includes people who did not actually pay the Lamination Fee, and because people who did not actually pay the Lamination Fee were not injured-in-fact, and because people who were not injured-in-fact lack standing to sue ODPS, and because those people who lack standing cannot be readily identified because ODPS' records do not differentiate between who paid the Lamination Fee with cash, credit card, check, debit card, etc., there is no way to readily determine who actually paid the Lamination Fee, making this case ineligible for class treatment. We disagree.

{¶ 21} In support of its argument that the foregoing question of "who actually paid the Lamination Fee" defeats the predominance requirement of Civ.R. 23(B)(3), ODPS relies heavily on *Felix,* 2015-Ohio-3430. ODPS' reliance on *Felix* is misplaced. *Felix* involved a class action brought to recover damages under the Ohio Consumer Sales Practices Act ("OCSPA"). In *Felix,* the purported class included all consumers who bought vehicles from certain car dealerships during a specified time frame who signed purchase agreements containing an allegedly unconscionable arbitration clause. After first discussing the

concept that plaintiffs in class actions "must demonstrate that they can prove, through common evidence, that all class members were in fact injured by the defendant's actions," *Felix* at ¶ 33, the court held that because the class as certified included individuals whose damages were, at best, inchoate, the class as certified was inconsistent with the former version of the OCSPA authorizing damages and Civ.R. 23. *Id.* at ¶ 37. The court explained, "there is absolutely no showing that all of the consumers who purchased vehicles through a contract with the offensive arbitration provision were injured by it or suffered any damages." *Id.*

{¶ 22} In contrast, in the instant case it is uncontested that each individual who was issued an Ohio Credential *was in fact directly charged the $1.50 Lamination Fee*. Put another way, in order to receive an Ohio Credential, the Lamination Fee was required to be paid. As the Court of Claims aptly stated, "[a]ll of the individuals who were issued a credential between July 2, 2018 and July 2, 2019 were required to pay the lamination fee to receive their credential, and simply put, were potentially overcharged $1.50." (Decision at 4.) Thus, unlike the putative class members in *Felix*, in this case, all class members were in fact injured by the actions of ODPS. The ultimate source of the $1.50 Lamination Fee on the part of each individual is simply not the determinative factor as to whether all class members were injured in fact, and none of the cases cited by ODPS hold otherwise. Accordingly, the Court of Claims finding that the predominance requirement was satisfied is not an abuse of discretion.

{¶ 23} ODPS next contends that the trial court abused its discretion, and therefore erred, in certifying the class as defined by the trial court by not considering and/or addressing notice to the class as provided for under Civ.R. 23. In this case, notice to the class is governed by Civ.R. 23(C)(2)(b) because the trial court certified the class pursuant to Civ.R. 23(B). Yet, none of the cases cited by ODPS holds or even implies that the order certifying the class must also specifically set forth how notice to the class is to be accomplished as is governed by Civ.R. 23(C), nor does the rule require it.

{¶ 24} Furthermore, ODPS is conflating the concept of consideration of notice to the class as part of the broader consideration of whether a class action is manageable, and therefore a superior method to other available methods of adjudication under Civ.R. 23(B)(3), with the specific requirements of notice as provided for under Civ.R. 23(C).

Consideration of the difficulty of notice to the class members is simply one part of the Civ.R. 23(B)(3) factor analysis of predominance and superiority, as discussed above and as ODPS acknowledges in its brief at page 39: "In determining whether a class action is a superior method of adjudication for a particular action, courts must also consider the management difficulties likely to be encountered if the action is continued as a class suit, **such as the burden of complying with Rule 23's notice requirements**." (Emphasis added.) *In re Vivendi Universal, S.A. Sec. Litigation.*, 242 F.R.D. 76, 107-09 (S.D.N.Y.2007).

{¶ 25} Moreover, the Court of Claim's decision certifying the class readily shows that the Court of Claims considered the issue of notice to the class members. On page 9 of the decision, the Court of Claims is clearly discussing the reasons it finds the class action method a superior means to adjudicate this controversy, and specifically states, "[a]lso, since Hamilton[4] verified that [ODPS] maintains records identifying the class members, the Court does not find that this class presents any manageability concerns." (Decision at 9.) Additionally, in discussing the "identifiable class" requirement of Civ.R. 23 earlier in its decision, the trial court pointed out that Hamilton had testified that "the BMV maintains records of the names and addresses of individuals who were issued a credential between July 2, 2018 and July 2, 2019 * * * [and] the names of those individuals who are potential members of the putative class can be reasonably identified by searching Defendant's records." (Decision at 4-5.) Thus, it is clear from the face of the Court of Claim's decision that it did indeed consider notice to the class members as part of its rigorous analysis into whether the requirements of Civ.R. 23 have been satisfied.

{¶ 26} Finally, we note that the parties present considerable arguments discussing whether the notice plan suggested by appellees in the court below comports with both the requirements of Civ.R. 23 and due process. But this specific issue is not properly before this court. This is so because neither the Court of Claim's decision nor entry certifying the class discusses, specifies, or orders any particular manner of or plan for notice. We can presume that at some point the Court of Claims would specifically address and even issue an order for a notice plan, but until such point any opinion of this court on the issue would be premature.

---

[4] Barbra Hamilton, ODPS' Senior Financial Manager, testified at the January 24, 2020 evidentiary hearing regarding class certification.

{¶ 27} Therefore, for the foregoing reasons, we conclude that the Court of Claims did not abuse its discretion in finding that appellees satisfied each of the requirements for a class action under Civ.R. 23(A) and (B)(3). As such, ODPS's sole assignment of error is overruled. Accordingly, the judgment of the Ohio Court of Claims granting class certification is affirmed.

*Judgment affirmed.*

DORRIAN, P.J., and LUPER SCHUSTER, J., concur.