[Cite as *Madyda v. Ohio Dept. of Pub. Safety*, 2023-Ohio-4889.]

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| KELLIE MADYDA, et al. | Case No. 2019-00426JD |
| Plaintiffs | Judge Dale A. Crawford |
| v. | DECISION |
| OHIO DEPARTMENT OF PUBLIC SAFETY | |
| Defendant | |

{¶1} Plaintiffs bring this class action against Defendant, Ohio Department of Public Safety (DPS), arising from the procedures for administering driver's licenses and identification cards in the state of Ohio. The Court held an oral hearing to determine the merits of the case. In lieu of presenting live witnesses, the parties jointly filed stipulations of fact in advance of the hearing, including the following exhibits: (A) A Contract Between Ohio Department of Administrative Services on Behalf of the Department of Public Safety and Veridos America, Incorporated; (B) Declaration of Janeth Antonio, RE: Notice Procedures; (C) Declaration of Anne M. Dean; and (D) Ohio Bureau of Motor Vehicles Fee Schedule. The parties also filed pre- and post-trial briefs.

{¶2} For the reasons stated below, the Court finds that the Deputy Registrars neither violated the procedures set forth by the Driver's License Law by charging a $1.50 lamination fee when issuing the relevant credentials[1] during the class period[2] nor were they unjustly enriched by retaining such a fee. Accordingly, the Court shall render judgment in favor of Defendant.

**Relevant Background**

---

[1] The term "credentials" includes an Ohio "driver's license, motorized bicycle license, or temporary instruction permit identification cards" issued in accordance with R.C. 4507.23(F) and any identification card issued in accordance with R.C. 4507.50.

[2] The phrase "class period" refers to any credential issued to a qualifying individual from July 2, 2018 until July 2, 2019.

{¶3} The Registrar of Motor Vehicles (Registrar) administers the Ohio Bureau of Motor Vehicles (BMV), a division of DPS, in accordance with R.C. 4501.02(A). The Director of Public Safety appoints the Registrar to, among other functions, administer the laws with respect to the licensing of motor vehicles, and the Registrar serves at the Director's pleasure. *Id.* To assist in administering these laws, the Registrar appoints Deputy Registrars, and "[a]ny act of an authorized [D]eputy [R]egistrar * * * under direction of the [R]egistrar is deemed an act of the [R]egistrar." R.C. 4507.01(B). Deputy Registrars issue credentials in accordance with the Driver's License Law. *See* R.C. 4503.03(C)(1) and Chapter 4507, et seq.

{¶4} Prior to July 2, 2018, Deputy Registrars would create, print, and laminate credentials on site and provide it to a qualifying individual in person at an office of the Deputy Registrar. During that time, Deputy Registrars were authorized to collect, in addition to other fees, a $1.50 fee to compensate for laminating the credentials (lamination fee). Regarding Ohio driver's licenses and other commercial licenses,[3] R.C. 4507.23(F) provided:

> Neither the registrar nor any deputy registrar shall charge a fee in excess of one dollar and fifty cents for laminating a [credential] * * *. A deputy registrar laminating a [credential] shall retain the entire amount of the fee for lamination, less the actual cost to the registrar of the laminating materials used for that lamination, as specified in the contract executed by the bureau for the laminating materials and laminating equipment. The deputy registrar shall forward the amount of the cost of the laminating materials to the registrar for deposit as provided in this section.

---

[3] With respect to identification cards and temporary identification cards issued to residents and temporary residents who are not licensed drivers or who have had their Ohio driver's license suspended, R.C. 4507.50(A) similarly provided:

> Neither the registrar nor any deputy registrar shall charge a fee in excess of one dollar and fifty cents for laminating [a credential]. A deputy registrar laminating such a card shall retain the entire amount of the fee charged lamination, less the actual cost to the registrar of the laminating materials used for that lamination, as specified in the contract executed by the bureau for the laminating materials and laminating equipment. The deputy registrar shall forward the amount of the cost of the laminating materials to the registrar for deposit as provided in this section.

{¶5} Beginning on July 2, 2018, the procedures used to administer credentials changed after advancements in modern travel necessitated a nationally recognized identification system. As a result, Deputy Registrars stopped creating, printing, and laminating credentials on site. Instead, the Ohio Department of Administrative Services (DAS) entered into a contract on behalf of DPS with a third-party vendor, Veridos American, Incorporated (Veridos), to create and laminate the credentials. After an individual visits a Deputy Registrar and provides the necessary documentation and payment to the Deputy Registrar, Veridos now produces and mails the credentials directly to the respective individual. Veridos then sends DPS a monthly invoice detailing the number of credentials it produced, and DPS pays at least $1.41 for every credential created to compensate for the services Veridos performs, including lamination.

{¶6} Although the procedures changed, the legislation in effect between July 2, 2018 and July 2, 2019 authorizing the collection of the lamination fee did not change, and Deputy Registrars continued to collect $1.50 despite no longer providing credentials on site. Eventually, the legislature modified the statutory language to reflect the modified procedure for issuing credentials. Effective July 3, 2019, R.C. 4507.23(F)[4] provides:

> The registrar and deputy registrar may charge a fee for the authentication
> of the documents required for processing a [credential] * * * as follows:
>
> (1) one dollar and fifty cents for a temporary instruction permit;
>
> (2) one dollar and fifty cents for a license issued to a person who is less
> than twenty-one years of age;
>
> (3) one dollar and fifty cents for a license that will expire on the applicant's
> birthday four years after the date of issuance;
>
> (4) Three dollars for a license that will expire on the applicant's birthday
> eight years after the date of issuance.

---

[4] The legislature similarly modified R.C. 4507.50(A) to provide, in relevant part:
an applicant * * * shall pay * * * prior to issuance of an identification card or temporary identification card * * * [a] fee of one dollar and fifty cents * * * for the authentication of the documents required for processing an identification card or temporary identification card. A deputy registrar that authenticates the required documents shall retain the entire amount of the fee. R.C. 4507.50(B)(1)(c).

A deputy registrar that authenticates the required documents for a [credential] shall retain the entire amount of the fee.

{¶7} Before this legislation went into effect, the Deputy Registrars issued 3,423,315 credentials from July 2, 2018 until July 2, 2019. During this time, the Deputy Registrars charged the $1.50 lamination fee for each credential issued and, by doing so, collected a total of $5,134,972.50. The Deputy Registrars did not remit to the BMV or DPS the lamination fees collected. Nevertheless, DPS paid Veridos for its services using taxpayer funds during this time.

{¶8} As a result, Plaintiffs brought this class action lawsuit alleging that the purported class was improperly charged and paid the lamination fee because Deputy Registrars no longer provided the services associated with the fee. This Court certified the class, defined as follows: All individuals who were issued an Ohio credential and were charged a lamination fee that was paid by the Ohio credential holder or paid on the Ohio credential holder's behalf to a Deputy Registrar for the State of Ohio on or after July 2, 2018 until July 2, 2019. *See Madyda v. Ohio Dept. of Pub. Safety*, Ct. of Cl. No. 2019-00426JD, 2020-Ohio-2905 (Mar. 20, 2020), *aff'd*, 2021-Ohio-956 (10th Dist.).

{¶9} After notifying the identified class members, 2,387 identified class members excluded themselves from the class. The lamination fees charged and collected for credentials issued to identified class members who excluded themselves from the class totaled $3,580.50. The lamination fees charged and collected by Deputy Registrars for credentials issued to the remaining identified class members who did not exclude themselves from the class totaled $5,131,392.00.

{¶10} Plaintiffs specifically argue that the Deputy Registrars should not have collected these fees because the legislative intent was only to authorize such a collection to compensate the Deputy Registrars for laminating the credentials themselves on an individual basis. Plaintiffs contend that there is a distinction between the Deputy Registrar performing lamination as a service (*i.e.* the Deputy Registrars being compensated for laminating credentials on site) versus providing a good (*i.e.* a qualifying individual receiving a laminated credential).

{¶11} Conversely, Defendant argues that R.C. 4507.23(F) unambiguously permitted the Deputy Registrars to charge the lamination fee and, therefore, Defendant

cannot be held liable for unjust enrichment.  Defendant contends that, even if the Court construed the statute as ambiguous and applied principles of statutory construction instead of giving effect to the statute's plain language, the result would be the same. Additionally, Defendant argues Plaintiffs lack standing to argue that the Deputy Registrars' retention of the lamination fee violated R.C. 4507.23(F) because Plaintiffs suffered no harm as a result of who retained the funds (*i.e.* Plaintiffs would still have to spend the $1.50 to receive a laminated credential regardless of who performed the laminating or whether the Deputy Registrar retained the funds instead of remitting them to the Registrar).[5]

**Discussion**

{¶12} At the outset, the Court finds that the Deputy Registrars stood in the place of the Registrar, who serves at the pleasure of the Director of Public Safety, when issuing credentials and collecting the fees at issue in this case.  *See* R.C. 4507.02(A).  The parties' attempt to stipulate that the Deputy Registrars collected and retained a fee for their own benefit that would not flow back to the Registrar is not well taken because it is statutorily prescribed that an act of a deputy registrar is deemed an act of the registrar. *See* R.C. 4507.01(B).  Moreover, generally applicable statutory law provides, in relevant part: "A deputy, when duly qualified, may perform any duties of his principal. * * * The principal is answerable for the neglect or misconduct in office of his deputy."  R.C. 3.06(A); *see generally Bilchek v. State Personnel Bd. of Review,* 10th Dist. Franklin No. 73AP-463, 1974 Ohio App. LEXIS 3867, 8 (April 30, 1974).

{¶13} There is no evidence that the Registrar instructed the Deputy Registrars to stop collecting the relevant fees during the class period.  Additionally, the parties have maintained during the pendency of this case that DPS is the proper defendant.  *Madyda v.*

---

[5] While Defendant frames this argument as an issue of Plaintiffs' standing, the Court finds this argument goes to the merits of Plaintiffs' unjust enrichment claim and will consider the argument to that end.  Notwithstanding, Plaintiffs conferred a benefit when they tendered a $1.50 lamination fee to Deputy Registrars and, therefore, have a personal interest in the determination of whether the Deputy Registrars unjustly collected and retained such a fee. *See generally Blank v. Bluemile, Inc.*, 2021-Ohio-2002, 174 N.E.3d 859, ¶ 17 (10th Dist.), quoting *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, ¶ 9 ("To have standing, a party must have a personal stake in the outcome of a legal controversy with an adversary.").

*Ohio Dept. of Pub. Safety*, 10th Dist. Franklin No. 20AP-217, 2021-Ohio-956, ¶ 3, fn. 3. Reading R.C. 4507.02(A) and 4507.01(B) *in pari materia* with R.C. 3.06(A), the Court finds that the legislature intended for Deputy Registrars to perform their duties with respect to the issuance of credentials and the collection of fees therefrom on behalf of DPS.[6] Therefore, the Court finds no reason to distinguish the acts of the Deputy Registrar from those of the Registrar for purposes of this decision.

{¶14} Additionally, the Court questions whether Plaintiffs have statutory authority to bring a cause of action to recover money damages based solely on a violation of R.C. 4507, et seq. *See Thompson v. Southern State Community College*, 10th Dist. Franklin No. 89AP-114, 1989 Ohio App. LEXIS 2338, 4 (June 15, 1989) ("Since the alleged constitutional violations herein require an element of state action, plaintiff's constitutional claims present no viable cause of action to be heard in the Court of Claims."); *see also Vos. v. Ohio Environmental Protection Agency*, 10th Dist. Franklin No. 17AP-749, 2018-Ohio-2956, ¶ 10 ("When a complaint seeks recovery purely for a statutory violation, no action will lie against the state unless the statute in question provides for a private cause of action."); *see also Bungard v. Dept. of Job & Family Servs.,* 10th Dist. Franklin No. 07AP-447, 2007-Ohio-6280, ¶ 6 ("If no statutory authority for a lawsuit against the state exists, the suit is barred because the court lacks subject matter jurisdiction over the controversy."); *see also Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 37 ("suits against the state are inherently limited by the type of action asserted against it; if the cause of action is not cognizable as between private parties, then there can likewise be no state liability."). Because DPS did not raise the issue, this decision takes no position regarding whether this cause of action constitutes a claim upon which relief could be granted.

{¶15} Notwithstanding, the Court finds that the Deputy Registrar charging the lamination fee during the class period did not violate the procedures for administering

---

[6] Deputy Registrars being classified as "independent contractors" pursuant to R.C. 4503.03(C)(1) does not influence this finding. *See generally Meyers v. Hadsell Chem. Processing, LLC*, 2019-Ohio-2982, 140 N.E.3d 1069, ¶ 34 (10th Dist.), quoting *Johnson's Markets, Inc. v. New Carlisle Dept. of Health*, 58 Ohio St.3d 28, 35, 567 N.E.2d 1018 (1991) ("this court in the interpretation of related and co-existing statutes must harmonize and give full application to all such statutes unless they are irreconcilable and in hopeless conflict.").

credentials provided by the Driver's License Law. Indeed, "[w]hen construing the language of a statute, a court must 'ascertain and give effect to the intention of the General Assembly.'" *Meyers v. Hadsell Chem. Processing, LLC*, 2019-Ohio-2982, 140 N.E.3d 1069, ¶ 32 (10th Dist.), quoting *Dodds v. Croskey*, 143 Ohio St.3d, 2015-Ohio-2362, 37 N.E.3d 147, ¶ 24. When the legislative intent is clearly expressed, a court may not restrict, constrict, qualify, narrow, enlarge, or abridge the language of the statute "under the guise of statutory construction." *Id.* (internal citations and quotation marks omitted). Put simply, a court must apply the statutory language as written and give effect to the plain words used when a statute is clear and unambiguous. *Clark v. State Teachers Ret. Sys.*, 10th Dist. Franklin No. 18AP-105, 2018-Ohio-4680, ¶ 17.

{¶16} It is only when some doubt or ambiguity exists that a court resorts to principles of statutory construction. *Id.* at ¶ 17-19. Under the *in pari materia* rule of statutory construction, "a court must read all statutes relating to the same general subject matter together to give proper force and effect to each one." *In re Duke Energy Ohio, Inc.*, 150 Ohio St.3d 437, 2017-Ohio-5536, 82 N.E.3d 1148, ¶ 27. When determining the intention of the legislature with respect to ambiguous statutes, R.C. 1.49(A)-(F) provides that the court may consider, among other things: "[t]he object sought to be attained; [t]he circumstances under which the statute was enacted; [t]he legislative history; [t]he common law or former statutory provisions, including laws upon the same or similar subjects; [t]he consequences of a particular construction; and [t]he administrative construction of the statute." *But see TWISM Enters., LLC v. State Bd. of Registration for Professional Engineers & Surveyors*, Slip No. 2021-1440, 2022-Ohio-4677, ¶ 39 ("One might question the authority of the General Assembly to tell the judiciary how to engage in its interpretive function."). And "[d]oubts as to the interpretation of a statute should be resolved in favor of the agency if the interpretation is reasonable." *Clark* at ¶ 38, citing *State ex rel. Gill v. School Emp. Retirement Sys. Of Ohio*, 121 Ohio St.3d 567, 2009-Ohio-1358, 906 N.E.2d 415, ¶ 28; *but see TWISM Enters., LLC* at ¶ 42 ("When we say that we will defer to an administrative agency's reasonable interpretation of a statute * * * we assign to the agency a range of choices about statutory meaning.").

{¶17} Prior to July 3, 2019, the relevant Driver's License Law specifically instructed that "[n]either the registrar nor any deputy registrar shall charge a fee in excess of one

dollar and fifty cents for laminating a [credential] * * *." *See* R.C. 4507.23(F) and 4507.50(A). The Court finds this language to be clear and unambiguous. Moreover, the Court finds that the ultimate purpose for a qualifying individual to pay for the service of lamination is to receive a laminated credential.

{¶18} The Court is not persuaded by Plaintiffs' argument that the lamination service was not performed and, therefore, any distinction between a laminated credential as a good versus providing the service of lamination is not of import under the circumstances. The service of lamination certainly occurred for the class members to receive their laminated credentials. And there is no statutory language that specifically directs the Deputy Registrars to perform the lamination services on site themselves as opposed to contracting with a third party to perform such services. Moreover, the class members were not double charged the lamination fee to receive their credential as a result of Veridos assuming the responsibility of creating and laminating the credentials. Thus, the Deputy Registrars' continued adherence to the statute as written, given the service of lamination was still being provided, is a reasonable interpretation of the statute under the circumstances.

{¶19} Furthermore, the Court finds that any arguable violation of such procedures did not unjustly enrich the Deputy Registrar. Unjust enrichment of a person, or liability in quasi-contract, "occurs when [a person] has and retains money or benefits which in justice and equity belong to another." *Hummel v. Hummel*, 133 Ohio St. 520, 528, 14 N.E.2d 923 (1938). Because a claim for unjust enrichment arises from a contract implied in law or quasi-contract,[7] Defendant's "civil liability arises out of the obligation cast by law upon [the party] in receipt of benefits which [it] is not justly entitled to retain without compensating the individual[s] who conferred the benefits." *Longmire v. Danaci*, 2020-Ohio-3704, 155 N.E.3d 1014, ¶ 32 (10th Dist.) (internal citations and quotation marks omitted).

---

[7] While neither party has addressed whether an enforceable contract existed with respect to the transaction that occurred when Plaintiffs paid a monetary fee in exchange for a laminated license, the Court notes that a claim for unjust enrichment generally exists only in the absence of an express contract. *See generally Cent. Allied Enters. V. Adjutant Gen. Dept.*, 10th Dist. Franklin No. 10AP-701, 2011-Ohio-4920, ¶ 39 ("Absent bad faith, fraud, or some other illegality, an equitable action for unjust enrichment will not lie when the subject of the claim is governed by an express contract.").

{¶20} To prevail, Plaintiffs must establish that: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit; and (3) it would be unjust to permit the defendant to retain the benefit without payment." *Meyer v. Chieffo*, 193 Ohio App.3d 51, 2011-Ohio-1670, 950 N.E.2d, ¶ 37 (10th Dist.). To succeed, "[i]t is not sufficient for the plaintiffs to show that [they have] conferred a benefit upon the defendants. [Plaintiffs] must go further and show that under the circumstances [they have] a superior equity so that as against [them] it would be unconscionable for the defendant to retain the benefit." *Longmire* at ¶ 32 (internal citations and quotation marks omitted). Moreover, "[i]n the absence of fraud or bad faith, a person is not entitled to compensation on the ground of unjust enrichment if he received from the other that which it was agreed between them the other should give in return." *Ullman v. May*, 147 Ohio St. 468, 72 N.E.2d 63 (1947), paragraph four of the syllabus.

{¶21} Initially, the Court questions: who is the Defendant in this case? Plaintiffs named the Department of Public Safety as the chosen defending party in this case. What is the state's action during the class period? DPS, through its Registrar and Deputy Registrars, charged fees, including the lamination fee, to issue and produce laminated credentials. To receive a credential, a qualifying individual visited a Deputy Registrar to pay those fees and provide the necessary documents. Deputy Registrars forwarded the necessary information to Veridos. Veridos created the laminated credentials and provided them to the necessary individuals. DPS then paid Veridos for every laminated credential it produced. What unjust benefit could DPS have received through this arrangement?[8]

{¶22} Indeed, there is no evidence that the Deputy Registrars committed fraud or acted in bad faith when they collected the lamination fee during the class period. While the Deputy Registrars were no longer performing the lamination service on site, they were instead authenticating the documents necessary for Veridos to create and laminate the credentials. Put simply, Plaintiffs paid a monetary fee to the Deputy Registrars in

---

[8] While individual Deputy Registrars may have received a benefit and, under their agreement with the Registrar or BMV, DPS may have a claim that the Deputy Registrars should have remitted the amount of the lamination fees collected during the class period. However, that issue is not the subject of this lawsuit.

exchange for a laminated credential and it is not disputed that each class member received the same in return.

{¶23} Furthermore, the Deputy Registrars were not enriched by retaining the $1.50 fee because they continued to perform a service—albeit the "authentication of documents" instead of "laminating" the credentials—for the purpose of issuing laminated credentials to qualifying individuals, which is evidenced by the legislature's modification to the relevant statutes in 2019. The Court finds that the relevant history shows the legislature intended for the Deputy Registrars to continue to collect and retain the additional $1.50 fee for services associated with issuing credentials despite the change in procedures for who specifically performed the lamination service. Thus, the Court finds that it was not unconscionable for the Deputy Registrars to retain the additional $1.50 fee under the circumstances. Therefore, Plaintiffs are not entitled to recover for unjust enrichment.

**Conclusion**

{¶24} For the reasons stated above, the Court renders judgment in favor of Defendant.

DALE A. CRAWFORD
Judge

[Cite as *Madyda v. Ohio Dept. of Pub. Safety*, 2023-Ohio-4889.]

KELLIE MADYDA, et al.

    Plaintiffs

    v.

OHIO DEPARTMENT OF PUBLIC
SAFETY

    Defendant

Case No. 2019-00426JD

Judge Dale A. Crawford

<u>JUDGMENT ENTRY</u>

## IN THE COURT OF CLAIMS OF OHIO

{¶25} For the reasons set forth in the decision filed concurrently herewith, the Court finds that Defendant neither violated the procedures set forth by the Driver's License Law nor was it unjustly enriched when Plaintiffs paid the lamination fee at issue. Accordingly, the Court renders judgment in favor of Defendant. Court costs are assessed against Plaintiffs. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

DALE A. CRAWFORD
Judge

**Filed December 22, 2023**
**Sent to S.C. Reporter 1/30/24**